Fred L. "A.L." DOMINGUES, Appellant,

v.

The CITY OF SAN ANTONIO, Appellee.

No. 04–97–00236–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 16, 1998.

Rehearing Overruled Jan. 11, 1999.

Barbara Woodward, Law Office of Babrbara Woodward, Bruce J. Mery, Law Offices of Bruce J. Mery, San Antonio, for Appellant.

Bruce Robertson, Jr., Law Offices of Bruce Robertson, Jr., William W. Morris, Alberto J. Pena, Assistant City Attorney, San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice (concurring in the judgment only) and KAREN ANGELINI, Justice.

KAREN ANGELINI, Justice.

The City of San Antonio appeals a judgment rendered in favor of Fred "A.L." Domingues in Domingues's suit against the City under the Texas Whistle Blower Act. The City raises five points of error, alleging that Domingues's claims are barred by collateral estoppel and his failure to exhaust administrative remedies, that the trial court erred in excluding evidence, and that the trial court erred in denying the City's motion to modify the judgment and in partially denying its motion for judgment notwithstanding the verdict. Domingues raises two cross points of error regarding the trial court's exclusion of evidence and its partial granting of the City's motion for judgment notwithstanding the verdict. We affirm, in part, and reverse, in part, the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In November and December of 1986, Fred "A.L." Domingues, a San Antonio Police Sergeant, reported that several San Antonio Police Department officers were abusing and using excessive force against arrestees and jail inmates. Following these reports, Domingues was called before an advisory action board in the department's Internal Affairs Division. The board suspended Domingues for ten days. When Domingues returned to

duty, he was taken off of patrol and assigned duties at the City's detoxification center. He was also subjected to repeated accusations, complaints, and investigations.

In November of 1989, Raymond Duncan, a security guard at the detoxification center, reported to Belvin Steward, the City's liaison with the security guard company, that he had discovered Domingues engaged in what appeared to be sexual activity with a female police officer while Domingues was on duty at the detoxification facility. Domingues was indefinitely suspended in May of 1990.

Domingues appealed the suspension to the Voluntary Labor Arbitration Tribunal pursuant to the union contract between the City and the police officer's association. The arbitrator found that the report of sexual misconduct was true and that the City had just cause to discipline Domingues. Based on the facts that Domingues had been on the force for 23 years and that he was not disciplined for poor job performance, the arbitrator found that reinstatement without restoration of pay or fringe benefits was a more appropriate sanction than indefinite suspension.

Domingues did not appeal the award. Instead, he accepted his reinstatement and filed suit under the Texas Whistle Blower Act, alleging that the City had retaliated against him because he had reported the use of excessive force by San Antonio police officers. The suit was tried to a jury, which determined that Domingues had been suspended in May of 1990 because he had reported incidents of excessive force by members of the San Antonio Police Department. Accordingly, the jury returned a verdict in favor of Domingues and awarded him damages in the total amount of $168,000 for mental anguish, lost past and future wages, lost past and future employment opportunities, and arbitration costs. In addition, the jury awarded Domingues $90,000 in attorney's fees.

The City filed a motion to modify the judgment and a motion for judgment notwithstanding the verdict. The trial court denied the motion to modify, granted the motion for judgment notwithstanding the verdict as to the City's argument that Domingues was estopped from recovering damages for past lost wages and benefits, and denied the remainder of the motion for judgment notwithstanding the verdict.

### ARGUMENTS ON APPEAL

#### A. Arbitrator's Award

In its first point of error, the City contends that the trial court erred in excluding the arbitrator's award, which was offered in support of the City's defense of collateral estoppel. The issue presented to the jury in this case was whether Domingues had been suspended for a sexual indiscretion or because he reported wrongdoing within the police department. In an effort to prove the former, the City sought to introduce the arbitrator's award after it had presented its case in chief. In doing so, the City argued that "the statement— the document comes in because it's part of the operative facts of this case, and they ... the jury is entitled to know what the arbitrator considered." The arbitrator was not called as a witness and therefore could not be cross-examined. Accordingly, the trial court sustained Domingues's hearsay objection and excluded the evidence.

On appeal, the City argues that the arbitrator's statement was not offered to prove the truth of the matter asserted and was not, therefore, hearsay. *See* Tex.R. Evid. 801(d). We disagree. The contested issue at trial was not whether Domingues was actually involved in a sexual indiscretion on duty, but whether the allegation of such an indiscretion was the reason for his suspension. The arbitrator's award supports the contention that sexual indiscretion was the reason for Domingues' suspension. The record clearly reflects that the arbitrator's award was offered as proof that Domingues was suspended for sexual misconduct. As such, the award constitutes hearsay evidence.

Even if the arbitrator's award is not hearsay, the City contends that it was necessary to support the City's defense of collateral estoppel. Collateral estoppel is a question of law. *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 341, 139

L.Ed.2d 265 (1997); *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 138 (Tex.App.— El Paso 1997, writ denied). Because collateral estoppel is a question for the court, there was no harm in excluding from the jury evidence supporting the application of collateral estoppel to this case. The City's first point of error is overruled.

## B. Collateral Estoppel

■ In its second point of error, the City contends that the trial court erred in denying its motion for judgment notwithstanding the verdict because the City's defense of collateral estoppel was established as a matter of law. The City premises its claim of collateral estoppel on the arbitrator's award which determined that Domingues was suspended for sexual indiscretion. According to the City, the arbitrator's award precludes Domingues from re-litigating the issue of whether he was suspended for "whistle blowing" or for sexual indiscretion. The issue we are faced with, then, is whether an arbitrator's award, issued after an individual submits to arbitration pursuant to a collective bargaining agreement, should be given preclusive effect in a subsequent lawsuit involving the same facts.

The case law dealing with this issue is sparse, and the majority of cases addressing the issue in other jurisdictions deal with a subsequent workers' compensation retaliation suit, not a whistle blower suit. Such was the case in *Carrozza v. Texas Division–Tranter, Inc.*, 876 S.W.2d 173 (Tex.App.— Fort Worth 1994), *rev'd on other grounds*, 876 S.W.2d 312 (Tex.1994), the only illustrative Texas case we located. In *Carrozza*, the court held that "even when an arbitration decision [under a collective bargaining agreement] is adverse to an employee, he still has the right to bring a wrongful discharge action under [the Workers' Compensation Act]." *Id.* at 176. Similarly, other jurisdictions have held that employees are not prevented, despite the prior submission of a related claim to arbitration under a collective bargaining agreement, from pursuing a statutory cause of action in state court. *See, e.g., Blanchette v. Sch. Comm. of Westwood,* 427 Mass. 176, 692 N.E.2d 21, 25–28 (Mass.1998); *Genovese v. Gallo Wine Merchants, Inc.*, 226 Conn. 475, 483–493, 628 A.2d 946 (Conn. 1993); *Andrews v. May Department Stores,* 96 Or.App. 305, 773 P.2d 1324, 1326–1328 (Or.Ct.App.1989).

Although the above cited cases do not deal with the preclusive effect of arbitration on a whistle blower claim, they are instructive because the rights protected by both the workers' compensation retaliation statutes and whistle blower statutes are similar. *Compare* TEX. LAB.CODE ANN. § 451.001 *et. seq.* (Vernon 1996) (Texas Workers' Compensation Act), *with* TEX. GOV'T CODE ANN. § 554.001 *et. seq.* (Vernon Supp.1998) (Texas Whistle Blower Statute). The statutory rights embodied in these statutes are independent from any given collective bargaining agreement. If such were not the case, an individual covered by a collective bargaining agreement would be denied his right to pursue a statutory remedy simply because a collective bargaining agreement exists. Those covered by a collective bargaining agreement should have the same opportunity to litigate their claims of discrimination as those employees who are not covered by a collective bargaining agreement. Accordingly, the reasoning employed in the above cited cases applies equally to the case at bar.

Cases addressing this issue have consistently relied upon three Unites States Supreme Court cases in which the Court explicitly refused to give preclusive effect to an arbitrator's previous decision in lawsuits asserting statutory rights. *See McDonald v. West Branch,* 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (holding that, in a federal discrimination suit, the court should not afford collateral estoppel effect to an arbitration award rendered pursuant to the terms of a collective bargaining agreement); *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 745, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (stating that statutory claims are not barred by previous submission of claims to arbitrator pursuant to a collective bargaining agreement); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (finding that a plaintiff may pursue a statutory cause of action in spite of previous adverse decision in an arbitration proceeding brought pursu-

ant to collective bargaining agreement). The *Alexander* court distinguished the rights concerning the interpretation of a collective bargaining agreement and the statutory right to be free from discrimination:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights afforded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Alexander,* 415 U.S. at 49–50, 94 S.Ct. 1011. While, as the City points out, we are not dealing with a Title VII action in this case, the right of a public official to be free from retaliation for reporting illegal activity in the workplace is a right afforded by the State Legislature and is no less distinct from a contractual right than a right promulgated by Title VII. Accordingly, the distinction discussed in *Alexander* is applicable in this case.

■ The whistle blower statute in effect when Domingues filed suit requires that an "employee of a local governmental body must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination" before bringing a whistle blower action. *See* TEX. GOV'T CODE ANN. § 554.006(a) (Vernon 1994).[1] In enacting this section, the legislature clearly intended that employees of a local governmental body avoid litigation by initiating the proper grievance procedures when they have a potential whistle blower claim. However, there is nothing in the act which would preclude the filing of a lawsuit under this chapter if the employee is not satisfied with the

result of the grievance procedure. To say that the employee was bound by the result of the grievance procedure, would render the Whistle Blower Act meaningless to employees of local governmental bodies. This result was certainly not the intent of the legislature.

In support of its position in favor of the application of collateral estoppel, the City relies on *Albert v. Albert,* 391 S.W.2d 186 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). *Albert* is distinguishable on two grounds. First, the arbitration proceeding in that case was governed by a private contractual arbitration agreement, not a collective bargaining agreement. Second, the lawsuit filed following the rendition of the arbitrator's decision did not assert statutory causes of action, such as the Whistle Blower Act. Therefore, the distinction between contractual rights determined in an arbitration proceeding brought pursuant to a collective bargaining agreement and statutory rights promulgated by the Legislature was not at issue. Consequently, *Albert* is not controlling in this case.

The City further contends that a holding which requires parties to re-litigate questions of fact previously decided during arbitration would frustrate public policy. We disagree. First, we note that an arbitration proceeding in this context is very different from a trial court proceeding. To begin with, the parties are not the same. While the subject of the arbitration in this case was Domingues, the official party to the arbitration was the San Antonio Police Officers' Association. Accordingly, Domingues's claim might not have been supported as vigorously in arbitration as it was at trial. *See McDonald,* 466 U.S. at 291, 104 S.Ct. 1799. Also, the arbitrational fact-finding process is not the same as judicial fact-finding. *Alexander,* 415 U.S. at 57–58, 94 S.Ct. 1011. There is no discovery, no rules of evidence apply, and the rules of procedure are limited. Further, the range of remedies is much broader in a statutory whistle blower action, and arbitrators are often powerless to offer the aggrieved employee full vindication. *See Barrentine,* 450

---

1. Section 554.006 was amended by the legislature in 1995. Act of June 15, 1995, 74th Leg., R.S., ch. 721, § 6, 1995 Tex. Gen. Laws 3812, 3813–14. However, the amendment to section 554.006 does not apply to the instant case. Accordingly, we apply section 554.006 as it existed prior to the 1995 amendments.

U.S. at 745, 101 S.Ct. 1437. Taken together, these differences demonstrate that an arbitration proceeding does not afford the employee the same opportunities to present his case as a conventional lawsuit. Moreover, if an arbitrator's award was entitled to preclusive effect, many employees would bypass the arbitration process and proceed directly to the courthouse to file suit. Such a practice would create more litigation while reducing the possibility of settlement. *See Alexander*, 415 U.S. at 59, 94 S.Ct. 1011.

In light of the above discussion, we find that the doctrine of collateral estoppel does not apply to Domingues in this case. Accordingly, the trial court did not err in denying the City's motion for judgment notwithstanding the verdict based upon its collateral estoppel defense. The City's second point of error is overruled.

However, we have concluded that the trial court did err in granting the City's motion for judgment notwithstanding the verdict as to the jury's award of past lost wages and benefits. It appears that the trial court, in spite of its finding that the arbitrator's award did not have preclusive effect on Domingues's whistle blower action, determined that Domingues was not entitled to the jury's $40,000 award of past lost wages and benefits because he submitted to the arbitration process, and the arbitrator recommended that Domingues be reinstated without back pay. This decision is inconsistent with the previous finding regarding the application of collateral estoppel to this case. Because we have determined that the arbitrator's award does not preclude Domingues's statutory cause of action, it, likewise, does not preclude Domingues's recovery of damages under that cause of action. Accordingly we sustain Domingues's first cross point of error.

## C. Exhaustion of Remedies

In its third point of error, the City contends that the trial court erred in rendering judgment for Domingues because he failed to exhaust the applicable grievance and appeals procedure adopted by the City concerning the termination or suspension of an employee's employment. According to the City, Domingues failed to participate in the first two steps of the grievance and appeals procedure. The City contends that Domingues should have appeared before the advisory action board and had a personal appointment with the Chief of Police prior to requesting arbitration. The City also argues that Domingues was required to appeal the arbitrator's award to district court before his administrative remedies would be considered exhausted.

As noted above, the whistle blower statute provides that an "employee of a local governmental body must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination" before bringing whistle blower action. TEX. GOV'T CODE ANN. § 554.006(a) (Vernon 1994). However, the exhaustion requirements do not apply if a final decision is not rendered by the thirty-first day after the day the grievance procedure is initiated. TEX. GOV'T CODE ANN. § 554.006(d) (Vernon 1994); *see Anders v. Weslaco Ind. School Dist.*, 960 S.W.2d 289, 291 (Tex.App.—Corpus Christi 1997, no pet.) (noting that exhaustion is not required if employer fails to render final decision before thirty-first day after the grievance is initiated).

■ In this case, Domingues was suspended May 1, 1990. The fact that he timely initiated the grievance and appeals procedure appears to be undisputed. The arbitration hearings did not start until November 1990, and the final decision was not reached until January 1991. Under these facts, Domingues was not required to exhaust the grievance procedure pursuant to section 554.006 because a final decision regarding his claim was not reached within thirty days after he initiated the grievance procedure. The City's third point of error is overruled.

## D. Pre–Judgment Interest

### 1. Mental Anguish and Loss of Employment Opportunities

■ In its fourth point of error, the City contends that the trial court erred in overruling its motion to modify the judgment and

awarding prejudgment interest on Domingues's recovery of both past and future damages. Specifically, the City complains of the trial court's award of pre-judgment interest on the following three elements of damage found by the jury: past and future mental anguish, past and future loss of employment possibilities; and arbitration costs and expenses.

In cases involving wrongful death, personal injury, or property damage, prejudgment interest is governed by statute, which does not require separation of past and future damages. TEX.REV.CIV. STAT. ANN. art. 5069—1.05, § 6 (Vernon Supp.1996); *see C & H Nationwide v. Thompson*, 903 S.W.2d 315 (Tex.1994). However, the computation of prejudgment interest in cases involving retaliation under the Texas Whistleblower Act is governed by *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985).[2] *See* COMM. ON PATTERN JURY CHARGES. STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES— BUSINESS, CONSUMER & EMPLOYMENT PJC110.23 (1997).

Under *Cavnar*, prejudgment interest cannot be awarded on future damages because a plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. *Cavnar*, 696 S.W.2d at 554–56. Accordingly, if the plaintiff does not segregate past losses from future losses he is not entitled to recover prejudgment interest at all on those nonsegregated elements of damages. *Id.*

In this case, the special issues tendered to the jury did not segregate past damages from future damages for the elements of mental anguish and loss of employment opportunity. Accordingly, Domingues was awarded damages for both his past and future losses in lump sums. Under these circumstances, it is impossible to determine the amount of damages that had accrued at the time judgment was entered. Domingues argues that the City waived this argument by failing to object to the jury charge.

However, *Cavnar* and its progeny clearly place the burden of segregating on the party seeking damages and prejudgment interest. *See, e.g., Clifton v. Southern Pac. Transp. Co.*, 709 S.W.2d 636, 641 (Tex.1986); *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 636 (Tex.1986); *Monsanto Co. v. Johnson*, 696 S.W.2d 558, 559 (Tex.1985); *Gifford Hill American, Inc. v. Whittington*, 899 S.W.2d 760, 766 (Tex.App.—Amarillo 1995, no writ); *Sisters of Charity of Incarnate Word v. Dunsmoor*, 832 S.W.2d 112, 115 (Tex.App.—Austin 1992, writ denied); *City of San Antonio v. Hamilton*, 714 S.W.2d 372, 375 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.). It is only logical to place the burden of submitting a proper jury charge on the party to whom the benefit of the proper charge will inure. In such cases, the defendant has no basis for objecting to an improper charge. We, therefore, conclude that the burden was on Domingues to submit a segregated jury charge. Because he failed to do so, he is not entitled to prejudgment interest on mental anguish or loss of employment opportunity. *See Cavnar*, 696 S.W.2d at 556.

### 2. Arbitration Expenses

On the same basis, the City further argues that Domingues should not recover prejudgment interest on the arbitration expenses awarded by the jury. The City contends that the jury's award of arbitration expenses included attorney's fees. Because prejudgment interest is not recoverable on awards of attorney's fees, *C & H Nationwide, Inc.*, 903 S.W.2d at 325; *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 647 (Tex.App.—Texarkana 1995, writ dism'd); *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 670 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.), attorney's fees should have been segregated from the remaining arbitration expenses in the jury charge if prejudgment interest was going to be awarded on arbitration expenses.[3] Because there was no such segre-

---

**2.** We note that the different treatment of prejudgment interest depending on the type of case at issue, now applies only in cases in which the judgment was rendered on or before December 11, 1997. *See Johnson & Higgins of Texas, Inc.*

*v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 533 (Tex.1998).

**3.** The parties do not dispute whether prejudgment interest is recoverable on arbitration ex-

gation, the City contends that there is no way of knowing how much of the arbitration expenses finding included attorney's fees, and therefore prejudgment interest is inappropriate as to the entire finding.

■ However, the charge does not indicate that the arbitration expense element includes attorney's fees. In the absence of some evidence that the jury actually included attorney's fees in its award of arbitration expenses, we cannot assume that it did. This is a situation in which the burden of objecting to the form of the charge was on the City. If the City wanted to ensure that attorney's fees would not be included in the jury's computation of arbitration expenses, it should have requested a separate issue for each element or insisted that each element be mentioned in one issue. *Cf. Green Intern., Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997) (requiring objection to failure to segregate attorney's fees in case containing multiple causes of action, only some of which permitted recovery of attorney's fees). Because the City failed to object, it has waived this argument on appeal. The same is true for the City's argument that there is insufficient evidence to support the jury's award of arbitration expenses. The substance of the City's argument on this point is, not that there is no evidence of arbitration costs and expenses, but that there is no evidence of Domingues's arbitration attorney's fees. In so arguing, the City is assuming the jury included attorney's fees in its computation of Domingues's arbitration expenses. The jury was asked to determine the amount of money that would fairly and adequately compensate Domingues for "[a]rbitration costs and expenses." The jury was not instructed to include attorney's fees in its determination, and the City did not object to the charge.

Domingues testified that his arbitration expenses were $36,000, including transcription and attorney's fees. However, the jury awarded only $18,000. Because attorney's fees were not represented as an element of arbitration expense and the jury did not award the full amount requested, we do not

penses in general. Accordingly, there is no need for us to consider that question. Our analysis

know whether the jury included attorney's fees in its award. If the City wanted to preserve its error regarding the sufficiency of the evidence to support an award of arbitration attorney's fees, it was required to object to the broad form of the jury charge. *See* TEX. R. CIV. P. 274; *cf. Solis,* 951 S.W.2d at 390 (holding failure to object to charge that does not segregate attorney's fees as to specific claims waives error). Because it did not, the City has waived this error on appeal.

Accordingly, the City's fourth point of error is sustained as to the award of prejudgment interest on future mental anguish and future loss of employment opportunities, and overruled as to the award of prejudgment interest on arbitration expenses. The City's fifth point of error regarding the sufficiency of the evidence supporting Domingues's arbitration expense is overruled.

## F. Evidence of Retaliation

■ In his second cross point of error, Domingues contends that the trial court erred in excluding testimony regarding other instances in which the City allegedly retaliated against its employees for whistle blowing. Domingues argues that the trial court's refusal to admit such evidence prevented an award of exemplary damages.

■ In retaliatory discharge cases, the jury must find that the employer acted with malice before it can consider an award of punitive damages. *See City of Ingleside v. Kneuper,* 768 S.W.2d 451, 456–57 (Tex. App.—Austin 1989, writ denied). Therefore, in this case, the jury was asked to determine whether the City's suspension of Domingues was done with malice. Then, it was instructed to answer the punitive damages question only if it had answered "yes" to the malice question. The jury determined that the City did not act with malice; therefore, it never reached the punitive damages question. Consequently, the exclusion of any evidence relevant to Domingues's punitive damages

addresses only the segregation issue.

claim, if error, was harmless. Domingues's second cross point of error is overruled.

The judgment of the trial court is affirmed, in part, and reversed, in part. This case is remanded to the trial court for a recomputation of damages and pre-judgment interest consistent with this opinion.